UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES HEBESTREIT,

       Petitioner,                     Case No. 11-cv-13096

v.                                  HONORABLE STEPHEN J. MURPHY, III

CARMEN PALMER,

       Respondent.

_____/

**OPINION AND ORDER DENYING PETITION
FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A
CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS**

This is a petition for a writ of habeas corpus. Petitioner Charles Hebestreit, proceeding pro se, is confined at the Handlon Correctional Facility in Ionia, Michigan and challenges his conviction for armed robbery, Mich. Comp. Laws § 750.529. Having reviewed the record, the Court finds that Hebestreit has failed to establish a right to habeas relief, and will deny the petition.

**BACKGROUND**

Hebestreit pleaded guilty to armed robbery in Wayne County Circuit Court. In exchange for his plea, the Wayne County Prosecutor agreed to dismiss charges of bank robbery, false reporting of a bomb threat, and a supplemental information charging Hebestreit with being a fourth felony habitual offender. The plea bargain also included a sentence agreement that Hebestreit would receive ten to twenty years in prison. Trial Tr. 4/21/08, pp. 3-4. Hebestreit confirmed that these were the terms of the plea agreement. *Id.* at p. 4. Hebestreit was advised of the rights that he waived by pleading guilty. *Id.* at pp. 4-5. In making out a factual basis for the plea, Hebestreit told the judge that he "presented a note to the bank teller and took money from the bank teller." He indicated that he made a

threat to the teller by informing her "That I had a bomb." *Id.* at pp. 5-6.

Hebestreit was sentenced on May 6, 2008 to ten to twenty years in prison. He subsequently moved to withdraw his guilty plea, which was denied on June 5, 2009. His conviction was affirmed on appeal. *People v. Hebestreit,* No. 298370 (Mich. Ct. App. Sept. 17, 2010); *lv. den.* 489 Mich. 932 (2011).

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n.7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

The Michigan Court of Appeals denied Hebestreit's application for leave to appeal in a form order "for lack of merit in the grounds presented." The Michigan Supreme Court subsequently denied petitioner leave to appeal in a standard form order without any extended discussion. Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion, as would warrant federal habeas relief, does not require that there be an opinion from the state court that explains the state court's

3

reasoning. *Harrington,* 131 S. Ct. at 784. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* In fact, when a habeas petitioner has presented a federal claim to a state court and that state court has denied relief, " it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784-85. That presumption may be overcome only when there is a reason to think that some other explanation for the state court's decision is more likely. *Id.* at 785.

The AEDPA deferential standard of review applies to Hebestreit's case where the Michigan Court of Appeals rejected petitioner's appeal "for lack of merit in the grounds presented" and the Michigan Supreme Court subsequently denied leave to appeal in a standard form order. *See Werth v. Bell,* 692 F. 3d 486, 492-94 (6th Cir. 2012); *Hardaway v. Robinson*, 655 F.3d 445, 447, 449, n.1 (6th Cir. 2011).

## DISCUSSION

Hebestreit seeks a writ of habeas corpus on the following grounds: first, whether 2004 PA 128 was sufficiently clear to provide him fair notice that his conduct was proscribed; second, whether his plea was the product of an illusory concession, and whether he is entitled to specific performance of an implicit term of the agreement; third, whether he was denied the effective assistance of counsel during trial; and fourth, whether he was denied the effective assistance of counsel on direct review.

I.    Vagueness Claim

Habestreit claims that Michigan's armed robbery statute is void for vagueness because it did not put him on fair notice that his act of passing a note to a bank teller and

4

threatening to detonate a bomb if he was not given the money amounted to a criminal violation.

The Supreme Court indicated that "[t]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357 (1983). But "[i]t is well established that vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Powell*, 423 U.S. 87, 92 (1975) (citations omitted). Therefore, with the exception of cases which involve First Amendment guarantees, a defendant bears the burden of establishing that the statute is vague as applied to his or her particular case, not merely that the statute could be construed as being vague in some hypothetical situation. *See United States v. Krumei,* 258 F.3d 535, 537 (6th Cir. 2001). Moreover, a criminal statute need not meet "impossible standards of specificity" in defining the proscribed conduct. *Stout v. Dallman*, 492 F.2d 992, 994 (6th Cir. 1974). A statute's failure to define a particular word or phrase does not render the statute unconstitutionally vague where the common sense definition of the word or phrase provides sufficient notice as to the conduct that is prohibited and the standards for enforcement. *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996).

Michigan's armed robbery statute, as amended by 2004 Mich. Pub. Acts 128, states:

A person who engages in conduct proscribed under section 530 [MCL § 750.530, the unarmed robbery statute] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by

5

imprisonment for life or for any term of years.

MCL § 750.529 (footnote omitted).[1]

Hebestreit stated at the plea hearing that he handed a note to the bank teller in which he indicated that he had a bomb. The language of Michigan's armed robbery statute clearly indicates that a person "who represents orally or otherwise that he or she is in possession of a dangerous weapon" while committing a robbery is guilty of armed robbery. The armed robbery statute sufficiently defines the conduct to be proscribed, including an act of passing a note to a bank teller that indicates that the perpetrator possesses a bomb, because a common sense reading of the statute's prohibition on a person "orally or otherwise" representing that he or she is in possession of a weapon would include the act or passing a written bomb threat to a bank teller. Hebestreit is not entitled to habeas relief on his first claim.

II.   Involuntary Plea / Ineffective Assistance of Trial Counsel

The Court will discuss Hebestreit's second and third claims together because they are interrelated. In his second claim, Hebestreit alleges that his plea was involuntary because he was lead to believe by the prosecutor and his attorney that the sentencing guidelines on the armed robbery charge that he pleaded guilty to were 135-225 months, when he later learned at sentence that the guidelines were actually only 108-180 months. Hebestreit essentially argues that he was lead to believe that the plea agreement called for a below the guidelines sentence, which in his case would have been a minimum sentence of under

---

[1] Prior to the change in law, the prosecutor had to prove, through objective evidence, that a dangerous weapon, or an object reasonably believed to be a dangerous weapon, was used during the robbery. *See People v. Banks*, 454 Mich. 469, 480–81 (1997); *People v. Jolly*, 442 Mich. 458, 469 (1993).

nine years under the guidelines as scored.[2]   Hebestreit further argues that the plea agreement was illusory. In his third claim, Hebestreit claims that his trial counsel was ineffective for miscalculating the sentencing guidelines and for advising Hebestreit to plead guilty to the armed robbery charge when his conduct did not fall within the prohibitions of Michigan's armed robbery statute.

A plea of guilty must be knowingly and voluntarily made. The defendant must be aware of the "relevant circumstances and likely consequences" of his plea. *Hart v. Marion Correctional Institution*, 927 F.2d 256, 257 (6th Cir. 1991). The defendant must also be aware of the maximum sentence that can be imposed for the crime for which he is pleading guilty. *King v. Dutton*, 17 F. 3d 151, 154 (6th Cir. 1994). When a petitioner brings a federal habeas petition challenging his plea of guilty, the state generally satisfies its burden by producing a transcript of the state court proceedings showing that the plea was made voluntarily. *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. A habeas petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. *Id.* Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his guilty plea, as evidenced by the plea colloquy, is valid. *See Hastings v. Yukins,* 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002).

It is only when the consensual character of a guilty plea is called into question that the validity of a guilty plea may be impaired. *Mabry v. Johnson*, 467 U.S. 504, 508-509 (1984). A plea of guilty entered by one fully aware of the direct consequences, including the actual

---

[2] Under Michigan law, only the minimum sentence must presumptively be set within the appropriate sentencing guidelines range. *See People v. Babcock,* 469 Mich. 247, 255, n.7 (2003) (citing MCL § 769.34(2)).

value of any commitments made to him by the court, prosecutor, or his or her own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (such as bribes). *Id.* at 509 (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)). A federal court will uphold a state court guilty plea if the circumstances demonstrate that the defendant understood the nature and consequences of the charges and voluntarily chose to plead guilty. *See Hastings,* 194 F. Supp. 2d at 669.

Hebestreit first argues that his plea was involuntary because the sentencing guidelines for his armed robbery conviction turned out to be 108-180 months, as opposed to the range of 135-225 months as calculated by the prosecutor and defense counsel.

"[A] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action." *Brady*, 397 U.S. at 757. The mere fact that Hebestreit may have erroneously believed that his sentencing guidelines would be actually higher if he did not plead guilty would not render his plea involuntary. Moreover, as discussed in greater detail when addressing Hebestreit's illusory plea and ineffective assistance of counsel claims, Hebestreit's sentencing guidelines would have been significantly higher had he been convicted of all of the offenses that he had been charged with after a trial.

Hebestreit next contends that his plea was involuntary because he was lead to believe that he would receive a sentence below the sentencing guidelines range, which in this case would have amounted to a minimum sentence of less than nine years.

8

An unfulfilled state promise obtained in return for a guilty plea will entitle a habeas petitioner to habeas relief. *Myers v. Straub,* 159 F. Supp. 2d 621, 627 (E.D. Mich. 2001). But a federal court sitting in habeas review should not "lightly find misrepresentation in a plea agreement." *Id.*

Hebestreit has failed to show that either the judge, the assistant prosecuting attorney, or his defense counsel misrepresented the terms of the plea agreement or misled him into believing the terms of the agreement to be other than what they were. The parties indicated at the time of Hebestreit's plea that in exchange for his guilty plea to armed robbery, the charges or bank robbery, making a false bomb threat, and being a fourth felony habitual offender would be dismissed.  The parties also agreed that Hebestreit would be sentenced to ten to twenty years in prison. Hebestreit confirmed on the record that these were the complete terms of the plea and sentence agreement. There was no agreement from the judge or the assistant prosecuting attorney that Hebestreit would receive a minimum sentence below the guidelines range.

Absent extraordinary circumstances, or some other explanation as to why a defendant did not reveal other terms when specifically asked to do so by the trial court, a plea agreement consists of the terms revealed in open court, where the trial court scrupulously follows the required procedure for taking the defendant's plea. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986); *see also Hastings*, 194 F. Supp. 2d at 669. Because a plea bargain is contractual in nature, it would violate established contract-law standards to permit a defendant to attempt to prove that a plea agreement is otherwise than it unambiguously appears on a thorough record. *Baker,* 781 F.2d at 90. Plea agreements are to be strictly construed. *See United States v. Brummett,* 786 F.2d 720, 723 (6th Cir. 1986).

A term of a plea agreement "that is unambiguous on its face and agreed to by the defendant in open court will be enforced." *McAdoo v. Elo,* 365 F. 3d 487, 497 (6th Cir. 2004). Moreover, "[T]he United States Constitution does not require judges to explain the meaning of ...unambiguous terms during the plea colloquy in order to combat alleged misinformation that is not revealed on the record." *Id.*

In the present case, the only agreement stated on the record with regards to the sentence was that Hebestreit would be sentenced to ten to twenty years in prison. A "clear reading" of the plea agreement shows that there was no promise by the prosecutor or the trial judge that Hebestreit would receive a below the guidelines sentence. Hebestreit has therefore failed to show that the original terms of the plea agreement were breached by the prosecutor or the trial judge. *Myers,* 159 F. Supp. 2d at 628.

To the extent that Hebestreit claims that his trial counsel misled him regarding the terms of the plea agreement, a state court's proper plea colloquy will cure any misunderstandings that a petitioner may have had about the consequences of the plea. *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999). Thus, a claim of ineffective assistance of counsel predicated on allegedly misleading information given by counsel about the terms of a plea agreement can never constitute an "extraordinary circumstance" under *Baker* when the court conducts a proper, clear, and through plea colloquy. *Id.; see Hastings,* 194 F. Supp. 2d 670.

Finally, although Hebestreit claims that he understood the plea agreement to guarantee him a sentence below the sentencing guidelines range, habeas relief should not be granted by crediting a petitioner's subjective version of his understanding of the plea bargain. *See Nichols v. Perini*, 818 F.2d 554, 558-59 (6th Cir. 1987); *see also Doughty v.*

10

*Grayson,* 397 F. Supp. 2d 867, 881-82 (E.D. Mich. 2005).

Hebestreit next contends that the plea agreement was illusory. A plea agreement is entered into involuntarily and unknowingly if the defendant is unaware that the prosecution's promise is illusory. *See United States v. Randolph*, 230 F.3d 243, 250-51 (6th Cir. 2000). Illusory representations made by the prosecutor to induce a defendant to waive his right to trial and enter a guilty plea have been found to constitute coercion justifying the withdrawal of a guilty plea. *See Spearman v. United States*, 860 F. Supp. 1234, 1249 (E.D. Mich. 1994).

Hebestreit's plea agreement was not illusory. The prosecutor agreed to dismiss bank robbery and false bomb threat charges against Hebestreit, as well as a supplemental information charging him with being a fourth felony habitual offender. The prosecutor also agreed to a sentence of ten to twenty years in prison. Although the sentencing guidelines on the armed robbery charge by itself were only 108-180 months, had Hebestreit gone to trial and been convicted on all of the charges, including the habitual offender charge, his guidelines range would have been 135-450 months. *See* Tr. 6/5/09, pp. 11-12. Because Hebestreit derived a real benefit from his plea and sentencing bargain in this case, his plea was not illusory and he is therefore not entitled to habeas relief. *See McAdoo*, 365 F. 3d at 498.

In his third claim, Hebestreit claims that he was deprived of the effective assistance of trial counsel, because counsel misled him regarding the correct sentencing guidelines range and permitted him to plead guilty to the armed robbery charge, when the evidence did not support such a charge.

To show that he was denied the effective assistance of counsel under federal

11

constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Id.* at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379 (6th Cir. 2011) (quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 115, 127 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland*

standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (citing *Yarborough*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)). Finally, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Hebestreit claims that his trial counsel was ineffective in advising him to plead guilty. When a state prisoner asks a federal court to set aside a conviction due to ineffective assistance of counsel during the plea bargaining stage, a federal court is required to utilize a "'doubly deferential'" standard of review "that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow,* 134 S. Ct. 10, 13 (2013).

The Supreme Court has noted that:

Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function. Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place. Plea bargains are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in

13

balancing opportunities and risks. The opportunities, of course, include pleading to a lesser charge and obtaining a lesser sentence, as compared with what might be the outcome not only at trial but also from a later plea offer if the case grows stronger and prosecutors find stiffened resolve. A risk, in addition to the obvious one of losing the chance for a defense verdict, is that an early plea bargain might come before the prosecution finds its case is getting weaker, not stronger. The State's case can begin to fall apart as stories change, witnesses become unavailable, and new suspects are identified.

*Premo v. Moore*, 131 S. Ct. 733, 741 (2011). The Supreme Court further admonished:

These considerations make strict adherence to the *Strickland* standard all the more essential when reviewing the choices an attorney made at the plea bargain stage. Failure to respect the latitude *Strickland* requires can create at least two problems in the plea context. First, the potential for the distortions and imbalance that can inhere in a hindsight perspective may become all too real. The art of negotiation is at least as nuanced as the art of trial advocacy and it presents questions farther removed from immediate judicial supervision. There are, moreover, special difficulties in evaluating the basis for counsel's judgment: An attorney often has insights borne of past dealings with the same prosecutor or court, and the record at the pretrial stage is never as full as it is after a trial. In determining how searching and exacting their review must be, habeas courts must respect their limited role in determining whether there was manifest deficiency in light of information then available to counsel. AEDPA compounds the imperative of judicial caution.

Second, ineffective-assistance claims that lack necessary foundation may bring instability to the very process the inquiry seeks to protect. *Strickland* allows a defendant "to escape rules of waiver and forfeiture,". Prosecutors must have assurance that a plea will not be undone years later because of infidelity to the requirements of AEDPA and the teachings of *Strickland*. The prospect that a plea deal will afterwards be unraveled when a court second-guesses counsel's decisions while failing to accord the latitude *Strickland* mandates or disregarding the structure dictated by AEDPA could lead prosecutors to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo*, 131 S. Ct. at 741-42 (internal citations and quotations omitted).

Moreover, in order to satisfy the prejudice requirement for an ineffective assistance of counsel claim in the context of a guilty plea, the defendant must show that there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty, but would have insisted on going to trial. *Id.* at 743 (citing *Hill v. Lockhart*, 474 U.S.

14

52, 58-59 (1985)). An assessment of whether a defendant would have gone to trial but for counsel's errors "will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill,* 474 U.S. at 59. The Sixth Circuit has interpreted *Hill* to require a federal habeas court to always analyze the substance of the habeas petitioner's underlying claim or defense to determine whether but for counsel's error, the petitioner would likely have gone to trial instead of pleading guilty. *See Maples v. Stegall,* 340 F. 3d 433, 440 (6th Cir. 2003). The petitioner must therefore show a reasonable probability that but for counsel's errors, he or she would not have pleaded guilty, because there would have been a reasonable chance that he or she would have been acquitted had he or she insisted on going to trial. *See Garrison v. Elo,* 156 F. Supp. 2d 815, 829 (E.D. Mich. 2001). A habeas petitioner's conclusory allegation that, but for an alleged attorney act or omission he or she would not have pleaded guilty, is therefore insufficient to prove such a claim. *Id.* The test of whether a defendant would have not pleaded guilty if he or she had received different advice from counsel "is objective, not subjective; and thus, 'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" *Pilla v. U.S.*, 668 F.3d 368, 373 (6th Cir. 2012) (quoting *Padilla*, 130 S. Ct. at 1485).

Hebestreit has failed to show a reasonable probability that he could have prevailed had he insisted on going to trial, or that he would have received a lesser sentence than he did by pleading guilty. *See Shanks v. Wolfenbarger,* 387 F. Supp. 2d 740, 750 (E.D. Mich. 2005). Had Hebestreit been convicted of all of the charges, including the fourth felony habitual offender charge, his sentencing guidelines range would have been 135 to 450 months. Under this guidelines range, the judge could have conceivably sentenced

15

Hebestreit to 37 1/2 years in prison on the minimum sentence. Moreover, contrary to Hebestreit's argument, his act of giving a note to a bank teller, in which he threatened her with a bomb, is clearly conduct that is proscribed by Michigan's armed robbery statute. *See e.g.*, *People v. Sinclair,* 247 Mich.App. 685, 686 (2001). In addition, Hebestreit has failed to show that he has any viable defense to the dismissed charges, including the habitual offender charge. Because Hebestreit failed to show that he had a viable defense to the charges, he has failed to establish that counsel was deficient in advising him to plead guilty or that he would have prevailed had he gone to trial. Hebestreit is not entitled to habeas relief on his second and third claims.

III.     Ineffective Assistance of Appellate Counsel

Hebestreit finally alleges that he was deprived of the effective assistance of appellate counsel, when none of the three appellate attorneys who were appointed to represent him agreed to raise on his direct appeal the first three claims that Hebestreit raises before this Court, but were instead permitted by the trial court to withdraw from representing petitioner on his appeal. Hebestreit further claims that the trial judge should have appointed a fourth attorney to represent him on appeal after allowing his thitrd appellate counsel to withdraw. Because a fourth attorney was never appointed, Hebestreit represented himself on appeal before the Michigan appellate courts.

In his answer, respondent contends that appellate counsel was not ineffective for failing to raise these claims on appeal because they are meritless. Respondent further contends that appellate counsel were permitted to withdraw after filing a brief indicating that any claims on appeal would be frivolous. Hebestreit has not filed a traverse or reply disputing respondent's chronology regarding the appointment and the withdrawal of

appellate counsel. "The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true." 28 U.S.C.A. § 2248. Because no traverse has been filed by Hebestreit nor has any evidence been offered to contradict the allegations made by respondent with regards to petitioner's appellate counsel claim, respondent's allegations with respect to this claim will be accepted as true. *McCord v. Henderson*, 384 F.2d 135, 137 (6th Cir. 1967).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). But a court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). This Court has already determined that Hebestreit's first through third claims are without merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)).

Hebestreit is also not entitled to habeas relief on his claim that the trial court erred in refusing to appoint a fourth appellate attorney after his first three appellate attorneys were permitted to withdraw from his case.

In *Anders v. California,* 386 U.S. 738 (1967), the Supreme Court held that a court-appointed appellate counsel could move to withdraw if, following "a conscientious examination" of the case, appellate counsel determined that the case was "wholly frivolous." The Supreme Court indicated that any request to withdraw should "be accompanied by a brief referring to anything in the record that might arguably support the

17

appeal." *Id.* at 744. A copy of this brief should be furnished to the defendant and time should be given to allow him to raise any points that he chooses. *Id.* The Supreme Court indicated that the court, and not counsel, should decide, after a full examination of all the proceedings, whether the case is wholly frivolous. If the court makes such a finding, it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned. *Id.*

In *Smith v. Robbins,* 528 U.S. 259 (2000), the Supreme Court held that this section of the *Anders* opinion, which recited an acceptable procedure for treating frivolous appeals, is not obligatory upon the States. *Id.* at 272-73. In so holding, the Supreme Court noted that the procedure delineated in *Anders* procedure is not an "independent constitutional command," but is just "a prophylactic framework" that the Supreme Court established as one method to vindicate the constitutional right to appellate counsel. *Id.* at 273 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987)). States are therefore free to adopt different procedures, so long as those procedures adequately safeguard a defendant's right to appellate counsel. *Id.* at 265.

The Supreme Court in *Smith* went on to hold that the proper standard for evaluating a habeas petitioner's claim that appellate counsel was ineffective in neglecting to file a merits brief is that enunciated in *Strickland. Id.* at 285. Where a habeas petitioner has received appellate counsel who has complied with a valid state procedure for determining whether the defendant's appeal is frivolous, and the State did not at any time leave the defendant without counsel on appeal, there is no reason for a court to presume that the defendant has been prejudiced. *Id.* at 286. The Supreme Court further ruled that it was not the case that, if appellate counsel unreasonably chooses to follow a procedure such as

18

*Anders* instead of filing a merits brief, prejudice is so likely that a case-by-case inquiry into prejudice is not worth the cost. *Id.* at 287. With a claim that appellate counsel erroneously failed to file a merits brief, a defendant can satisfy the first part of the *Strickland* test by showing that a reasonably competent attorney would have found one non-frivolous issue warranting a merits brief. *Id.* at 288. However, petitioner will still be required to show that he was prejudiced by appellate counsel's failure to file a merits brief. *Id.*

Hebestreit was not denied the assistance of appellate counsel. Instead, three different appellate attorneys were appointed to represent him. Appellate counsel were permitted to withdraw after filing a brief indicating that any claims on appeal would be frivolous. Even assuming that the *Anders* briefs filed by appellate counsel were somehow defective, Hebestreit would still have to show that he was prejudiced by appellate counsel's failure to file a merits brief on his direct appeal. As mentioned above, Hebestreit presented these claims *pro se* before the Michigan Court of Appeals and the Michigan Supreme Court, who rejected his appeal. This Court has rejected Hebestreit's first three claims as meritless. Because these claims are without merit, Hebestreit failed to show that he was prejudiced by appellate counsels' failure to file a merits brief on appeal or that he was entitled to the appointment of a fourth appellate attorney. Hebestreit is not entitled to habeas relief on his fourth claim.

IV.   Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of

the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, the Court concludes that reasonable jurists would not debate the Court's conclusion that none of the claims in the habeas petition warrant relief, and will decline to issue a certificate of appealability. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Hence v. Smith*, 49 F. Supp. 2d 547, 549 (E.D. Mich. 1999).

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Hebestreit's petition for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appeability is **DENIED**.

**IT IS FURTHER ORDERED** that Heibstreet's request to appeal *in forma pauperis* is **DENIED**.

**SO ORDERED**.

s/Stephen J. Murphy, III
STEPHEN J. MURPHY, III

United States District Judge

Dated: January 13, 2014


I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on January 13, 2014, by electronic and/or ordinary mail.


s/Carol Cohron

Case Manager